AO 91 (Rev. 11/11)   Criminal Complaint (approved by AUSA Troyer C&W # 25-80)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 25-MJ-883 |
| Alpha Sacko | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of March 12, 24, 27 and April 28, 2025 in the county of Philadelphia in the Eastern District of Pennsylvania, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.  841(a)(1)(b)(1)(A), (b)(1)(C) | Distribution of 50 grams or more of methamphetamine, and a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance |
| 18 U.S.C. 922(g) | Felon in possession of a firearm |

This criminal complaint is based on these facts:
See the attached affidavit.

☑ Continued on the attached sheet.

s/ Emma Borysevicz
*Complainant's signature*

Emma Borysevicz, Special Agent, DEA
*Printed name and title*

Subscribed and Sworn to telephonically

Date: _____

Scott W. Reid
2025.04.29 11:36:51 -04'00'
*Judge's signature*

City and state: Philadelphia, Pennsylvania      Honorable Scott W. Reid, USMJ
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Emma Borysevicz, being duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of criminal complaint, charging Alpha SACKO ("SACKO") with violations of 21 U.S.C. § 841(a)(1), (b)(1)(A) (distribution of 50 grams or more of methamphetamine), 21 U.S.C. § 841(a)(1), (b)(1)(c) (distribution of a mixture and substance containing fentanyl), and 18 U.S.C. § 922(g) knowing he had been convicted of a felony punishable by more than one year, possessed a firearm in interstate and foreign commerce.

2. I am employed as a Special Agent with the Drug Enforcement Administration ("DEA") in Philadelphia, Pennsylvania, assigned to the Philadelphia Division Office Enforcement Group 42, which investigates narcotic trafficking. I have been employed as a DEA Special Agent since August 2024. While employed by the DEA, I have received specialized training from the DEA Academy in Quantico, Virginia, in the investigation and identification of narcotics traffickers, and have participated in investigations, which have led to the arrests of narcotics traffickers. I have conducted physical and electronic surveillance, debriefed confidential sources, worked with federal, state, and local narcotic agents and officers, and executed search warrants. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. Prior to joining the DEA, I was a Connecticut Certified Police Officer for approximately four years. I attended the 26-week Connecticut Police Academy where I had to pass all academic classes, report writing, firearms, defensive tactics, and Emergency Vehicle

Operations Courses.  I served with Manchester Police Department as a patrol officer for approximately two and one-half years. I responded to emergency calls for service, investigated motor vehicle accidents, robberies, burglaries, domestic disturbances, civil disturbance, enforced traffic regulations, and other misdemeanor and felony offenses. I wrote arrest and search warrants and spoke with prosecutors prior to going before judges to have the warrants signed. I testified in court proceedings. I processed and logged evidence of crimes, narcotics, and weapons. For approximately a year and a half, I served with Wethersfield Police Department as a patrol officer. I was also a member of the Mid-State Accident Reconstruction Squad and completed the extensive training to be a certified accident reconstructionist. I conducted complex investigations regarding serious physical injury and fatal motor vehicle crashes, pedestrian crashes, motorcycle crashes, and pedal bicyclists. I responded to the serious and fatal motor vehicle crashes to identify factors of the crash, gathered roadway evidence, assisted in 3-D scans of the scene, obtained video footage of the crash, responded to the hospital to communicate with health care professionals, individuals in the crash, family members, and maintained proper chain of custody with evidence gathered. I used mathematics and other information gathered on scene to further develop the leading factors in the crash by utilizing time/distance formulas, critical speed, airborne equations, and impact speeds. I prepared routine and non-routine reports to document, including but not limited to, search warrants, ex-parte warrants, and arrest warrants.

      4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter.

5. In February 2025, DEA Philadelphia began an investigation into the drug trafficking activities of Alpha SACKO. Agents identified SACKO as a distributor of pound quantities of methamphetamine and various quantities of fentanyl pills.

6. On March 12, 2025, investigators met with a confidential source (CS)[1] in anticipation of a controlled purchase with SACKO for methamphetamine. At the direction and control of investigators, CS exchanged communications with SACKO in which both agreed to meet in Philadelphia, PA for the transaction to occur. The CS was searched by investigators for money, weapons and contraband with negative results, and provided with Official Advance Funds (OAF) and an audio/video recording device to utilize during the controlled purchase.

7. At approximately 1:00 pm, while under constant surveillance by investigators, the CS met with SACKO at the pre-determined location in Philadelphia. SACKO provided the CS with approximately one pound of methamphetamine in exchange for the OAF. After the meeting, the CS returned to meet investigators and turned over the purchased methamphetamine.

8. The methamphetamine was processed by the DEA Northeast Laboratory and tested positive for methamphetamine hydrochloride with a net weight of approximately 440.4 grams, a substance purity of 100% plus or minus 7% with the amount pure substance of 440.4 grams plus or minus 29.1 grams.

---

[1] CS is a cooperating defendant who is participating in this investigation in exchange for consideration in a prosecution against CS for drug trafficking. CS has provided reliable information and assistance in previous DEA investigations resulting in the seizure of large quantities of narcotics and United States currency. After beginning CS's cooperation in this investigation, CS was arrested in Philadelphia and charged with burglary-related offenses and tested positive for marijuana with federal pretrial services. In December 2023, the burglary-related charges against CS were dismissed for lack of prosecution and CS was ordered to pay $500.00 in restitution. CS is also involved in a pending investigation regarding internet fraud. Nevertheless, investigators have continued to utilize CS since the information CS provided has consistently been corroborated and has led to the arrests of drug traffickers in Philadelphia, Pennsylvania. CS is not being paid.

9. On March 24, 2025, investigators met with CS in anticipation of another controlled purchase from SACKO for 100 fentanyl pills. At the direction and control of investigators, CS exchanged communications with SACKO in which they both agreed to meet in Philadelphia, PA for the transaction to occur. The CS was searched by investigators for money, weapons and contraband with negative results, and provided with OAF and an audio/video recording device to utilize during the controlled purchase.

10. At approximately 12:55 pm, the CS arrived in the area of the agreed upon meet location in Philadelphia. At the same time investigators observed SACKO arrive in a car, make a right turn and travel eastbound on Lyons Avenue and park on the grass on the lot containing vehicles with the "Sacko Family Transportation" decals. SACKO called CS and waved CS over to the car.

11. The CS got into the front passenger seat of SACKO's car, where SACKO handed the CS a clear plastic knotted bag containing pills. The CS then handed SACKO the OAF.

12. After the transaction, the CS met with investigators and turned over the bag containing the pills the CS purchased from SACKO. The bag contained approximately 100 blue circular pills, with an "M" marking on one side, and a "30" marking on the other side, which field-tested positive for the presence of fentanyl.

13. On March 27, 2025, investigators met with the CS in anticipation of a controlled purchase from SACKO for methamphetamine. At the direction and control of investigators, the CS exchanged communications with SACKO in which they both agreed to meet at Royal Farms, 2501 Church Street in Philadelphia for the transaction. Prior to meeting SACKO, the CS was searched by investigators for money, weapons, and contraband with negative results. The CS was provided with OAF and an audio/video recording device.

14. At approximately 10:55 am, the CS arrived at the meet location, and a short time later, SACKO arrived in a car.

15. At approximately 11:31 am, the CS entered the front passenger's seat of the SACKO's car, where SACKO provided the CS with methamphetamine in a white paper bag. In exchange, the CS provided SACKO with OAF.

16. At approximately 12:00 pm, the CS met with investigators and turned over the white paper bag the CS purchased from SACKO. The bag contained a clear heat-sealed bag containing approximately one pound of a white crystal-like substance which field tested positive for the presence of methamphetamine. During a debrief with investigators, the CS advised that SACKO had a small firearm in his front pocket during the controlled buy.

17. On April 28, 2025, at approximately 10:03 am, investigators observed SACKO exit 4220 Levick Street and enter a black Chevrolet Traverse VA registration THU2749. Investigators conducted a vehicle stop in the rear alley of 4220 Levick Street at Walker Street. During the vehicle stop, investigators recovered a firearm in SACKO's waistband. The firearm was a Taurus G2c 9mm serial# AEC170888. The firearm was loaded with live ammunition. I know from my training and experience that Taurus firearms are not manufactured in Pennsylvania, and it thus traveled interstate and/or foreign commerce.

18. DEA agents conducted a criminal history check for SACKO. Results indicated SACKO is a convicted felon and is unable to possess a firearm.

19. Based on the facts described above, I submit that there is probable cause to charge Alpha SACKO with violations of 21 U.S.C. § 841(a)(1), (b)(1)(A) (distribution of 50 grams or more of methamphetamine), 21 U.S.C. § 841(a)(1), (b)(1)(c) (distribution of a mixture and substance containing fentanyl), and knowing he had been convicted of a felony punishable

by more than one year, possessed a firearm in interstate and foreign commerce, 18 U.S.C. § 922(g).

/s/ Emma Borysevicz

Emma Borysevicz
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me by telephone
this 29th day of April 2025:

Scott W. Reid
2025.04.29 11:37:30 -04'00'

HON. SCOTT W. REID
United States Magistrate Judge